23678. BROWN *v.* LUMBERMEN'S MUTUAL CASUALTY COMPANY *et al.*

DECIDED APRIL 6, 1934.

*Haas, Gambrell & Gardner, Irving S. Nathan,* for defendants.

GUERRY, J. G. F. Brown filed a claim with the Department of Industrial Relations against the Southern G. F. Company with Lumbermen's Mutual Casualty Company as insurance carrier, contending that he sustained a compensable injury while in the employ of the defendant company. The commissioner awarded the injured employee compensation, and on appeal to the superior court the award was set aside. This action of the superior court judge is made the subject of exceptions to this court.

Counsel for plaintiff in error insists that the judgment should be reversed and the award of the Department of Industrial Relations affirmed for the reason that there was some evidence to support the award. It is true, by many decisions of this court and of our Supreme Court, that findings of facts by the industrial commission, now the Department of Industrial Relations, in the absence of fraud, where supported by any evidence, are conclusive and can not be reviewed by any court. That body has been made the sole arbiter of facts presented before it, in the same sense that findings of facts

by juries are conclusive. It has been made judge of the credibility of witnesses; it has power to reject the testimony of one witness for that of another. However, in the case at bar, as far as we can find, there is no dispute as to the material facts, and it remains for this court to determine as a matter of law, whether the facts as found by the Department of Industrial Relations show such an injury as to be compensable under the workmen's compensation act.

The evidence shows that the claimant was employed by the defendant company as a laborer, and that on the 22d day of November, while standing on a scaffold wrecking pans, he leaned over to pick up a tool that lay on the scaffold, and that something happened in his knee which caused him to suffer pain when walking and required medical attention some week or ten days thereafter. He did not report the injury to his employer until December 1, at which time the company authorized him to seek medical attention. The insurance carrier, after deducting seven-days waiting period, paid him compensation until the 23d of December, when, upon a more thorough investigation, it discontinued payments and denied that the claimant had suffered an accidental injury arising out of and in the course of his employment. The question is raised by defendant in error as to whether the injury received arose "out of" the employment of the claimant. The authorities cited in support of their contention that the injury did not arise "out of" the claimant's employment have failed to convince us. It is true that the employee merely leaned over to pick up a tool; that he did not slip, and that nothing unusual happened, such as some outside physical force which caused the injury. The nature of the injury remains a mystery. There was no medical testimony adduced before the director hearing the case, and nothing to show why in leaning over in the normal way the injury happened. The defendant in error, in this connection, contends that doubtless the claimant bends over to tie and untie his shoes and do many other things unrelated to his work, each day, and that therefore it can not be said that his bending over to pick up a tool from which injury ensued arose "out of" his employment. We do not think the position of counsel is sound. The same might be said of many accidents that are compensable under this act. A laborer may doubtless pick up many heavy objects while not in the course of his employment, and may perhaps in doing so assume awkward posi-

tions, but would it be held that this fact precluded his recovery, if while engaged in lifting a heavy object in the course of his employment he sustained an injury? The particular injury complained of need not have been foreseen or expected, but it is sufficient if, after the injury, it can be traced to the employment as a contributing cause.

The important question that arises in this case is whether there must actually be some accident, in the technical sense of that word; that is, some unforeseen outside physical force which causes the injury, or whether, as in cases of this character, the injury itself, which is unforeseen and unexpected, is an accident, within the meaning of that word *as used* in the workmen's compensation act. To conceive a correct construction of the word "accident" as used in the workmen's compensation act it is necessary that we consider the nature of the act itself; for what purpose it was passed; what were the evils it was intended to obviate and the scope of its operation. The workmen's compensation act arose, as does most public legislation, from a public demand. The law attempts to solve certain pressing problems which have arisen out of the changed industrial conditions of our time. The legislature has endeavored by this law to provide means by which employer and employee may, if they so choose, escape entirely from that very troublesome factor known as "personal injury litigation." The means is a system by which every employee not guilty of wilful misconduct may obtain at once a reasonable recompense for injuries accidentally received in his employment, without lawsuit and without friction. The act was adopted to protect workingmen and their dependents from want in case of injury, on the theory that contributory negligence, the doctrine of fellow-servant negligence, and assumption of risk are inapplicable. It is based on the broad economical theory that the compensation is properly chargeable as a part of the cost of industrial activity and production. It is founded on the basic principle that industry should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and its purpose is to furnish a remedy that will reach every injury sustained by a workman engaged in that industry. Thus compensation is awarded without reference to the fault of the employer or the care of the employee. It has therefore been held that although the statute is in derogation of the common law, due to its

beneficent purposes it should, when construction is necessary, be given a liberal construction. The act provided: "'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except where it results naturally and unavoidably from the accident." In 14 R. C. L. 1238, an accident is defined "as an event that takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." It is unquestionably true, as is stated above, that the workmen's compensation act should be construed liberally in favor of the workman so as to effectuate the purposes for which it was intended,—that is, to compensate the workman, within the limitations prescribed in the act, for injuries received by him which arise out of and in the course of his employment; diseases not resulting naturally and unavoidably from the accident, and injuries inflicted by third persons for personal reasons, being excepted. An injury received while in the course of the employment and in the performance of an act connected with the employment, which injury is unexpected and which may proceed from an unknown cause, or is the unusual effect of a known cause, is an injury caused by accident which is compensable under our law. The great weight of authorities from other states support this view. If the occurrence is sudden, unexpected, and undesigned by the workman, it comes within the provisions of the acts.

In Gilliland v. Cement Co., 104 Kan. 771 (180 Pac. 793), where the same question as in the case at bar was involved, it was said: "In the case of Fenton v. Thorley & Co., Limited, Appeal Cases (1903), p. 443, the House of Lords considered and disposed of the question. A workman employed to turn the wheel of a machine felt something which he described as a 'tear in his inside,' and examination disclosed a rupture. There was no evidence of any slip or wrench or sudden jerk. The injury occurred while the man was engaged in his ordinary work, and in doing, or trying to do, the very thing he aimed to accomplish. . . In the judgment delivered by Lord MacNaghten, reversing the court of appeal and directing an award of compensation, it was said: 'If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap

in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him. . . There is . . a recent decision of the court of session in Scotland to which I should like to call your Lordships' attention, and in which I agree entirely. It is the case of Stewart *v.* Wilsons and Clyde Coal Co., Ld. (5 F. 120). A miner strained his back in replacing a derailed coal hutch. The question arose, Was that an accident? All the learned judges held that it was. . . What the miner did in replacing the hutch he certainly did deliberately and in the ordinary course of his work. There was nothing haphazard about it.' Lord M'Laren observed that it was impossible to limit the scope of the statute. He considered that 'if a workman in the reasonable performance of his duties sustains a physiological injury as the result of the work he is engaged in . . this is accidental injury in the sense of the statute.' Lord Kinnear observed that the injury was 'not intentional' and that 'it was unforeseen.' 'It arose,' he said, 'from some causes which are not definitely ascertained, except that the appellant was lifting hutches which were too heavy for him. If,' he added, 'such an occurrence as this can not be described in ordinary language as an accident, I do not know how otherwise to describe it.'" Injury by accident means nothing more than accidental injury or accident as the word is popularly used. To borrow the expression from another English case, Brintons *v.* Turvey (A. C. [1905] 230), the man "broke a part of his body." The fact that the man's condition predisposed him to such an accident seems to be immaterial. In Terre Haute Malleable &c. Co. *v.* Wehrle, 76 Ind. App. 656 (132 N. E. 698), it was said: "The workman was doing his work in the natural, normal, and regular way. He was doing his work exactly as he intended to do it. But the injury was accidental. It was not expected, anticipated, foreseen, designed or intended." In Standard Cabinet Co. *v.* Landgrave, 76 Ind. App. 593 (132 N. E. 661), it was said: "It has been repeatedly held by this court that the words 'by accident arising out of and in the course of employment,' as used in the Workmen's Compensation Act, supra, should be liberally construed in harmony with the humane purposes of the act, and that the word 'accident' means an unlooked for mishap or untoward event not expected or designed." See also Woodruff *v.*

Howes Construction Co., 228 N. Y. 276 (127 N. E. 270). In Webber's case, 121 Me. 410 (117 Atl. 513), the employee was walking on a level floor when, as he expressed it, "I felt a little pain in my knee below those cords.—I don't know whether it was in the knee or what it was,—it all gave out. . . I didn't stumble, slip, or trip, or anything of that kind." The court said: "That the sudden cramp and instant fall of the claimant was caused by the performance of his duty in hourly making his rounds and climbing the stairs may properly and reasonably be found; it was traceable to his work." Compensation was allowed. In Babich v. Oliver Iron Mining Co., 157 Minn. 122 (195 N. W. 784, 202 N. W. 904), it was said: "A sudden and violent rupture or break in the physical structure of the body of an employee, caused by some strain or exertion in the employment of the master, is an accidental injury within the meaning of the Workmen's Compensation Act, even though no external unforeseen event such as slipping, falling or being struck contributes thereto." Hooper, J., in the case of *American Mutual &c. Co.* v. *McCarly,* 45 *Ga. App.* 483 (165 S. E. 291), discussed the case of *London Guarantee & Accident Cor.* v. *Wallace,* 35 *Ga. App.* 571, and said: "I find that the evidence in that record shows that Wallace, a stationary engineer, was attempting to start his engine by turning (or lifting) a flywheel; he only had to turn it 1/32 of an inch. He testified: 'Just a little lift would do it. . . I didn't slip in any way, the wheel didn't kick back, I just moved on it the least little bit. I accomplished what I set out to do, just pulled on it. I intended to pull on it. I was standing just like I always had stood, only leaning up against the wheel. Nothing else happened except pulling up on it, and felt something pain me, struck me in the hip. Didn't have to push it but a short distance, and thought I could do it myself, just shake it.' This court held Wallace entitled to compensation for an 'injury by accident' under § 2(d) of the act." However, our own court in the case of *Westbrook* v. *Highview Inc.,* 42 *Ga. App.* 834 (157 S. E. 362), said: "An act done by an employee in the ordinary performance of the duties for which he is employed, when done in a manner not unusual or unexpected, but in the manner ordinarily required and expected of him in the performance of his duties, does not constitute an injury by accident; and a hernia resulting to the employee from the performance of

such act does not result from an injury by accident." If this is the correct construction of the act, the action of the superior court judge was correct in reversing the award of the commissioner, for there was nothing done by the employee which was not ordinarily done in his occupation; nothing unusual or unexpected happened, in the sense of some physical force, to cause the injury. We agree with counsel for defendant in error that it becomes a question of following or not following this decision. In making the decision in that case the citations used by the court as authority for the position there taken seem to us, irrespective of the ultimate correctness of the decision itself, to be out of harmony with, and entirely disassociated with the meaning and intent of the workmen's compensation act. The case of United States Mutual Accident Asso. v. Barry, 131 U. S. 100 (9 Sup. Ct. 755, 33 L. ed. 60), cited by the court in the *Westbrook* case, supra, was where the deceased was insured under an accident insurance policy which provided that a stated sum was to be paid to his wife, as beneficiary, upon proof of his death from sustaining "bodily injuries effected through *external, violent and accidental means.*" (Italics ours.) The language used in the accident policy is in no way similar to that used in the workmen's compensation act, as it specifically points out that there must be some *external and violent means.* This decision does not demonstrate to us the correctness of the principle announced, with regard to construction of the word "accident" as used in our workmen's compensation act, in the *Westbrook* case, supra. The cases of *Atlanta Accident Asso.* v. *Alexander,* 104 *Ga.* 709 (30 S. E. 939, 42 L. R. A. 188), and *Fulton* v. *Metropolitan Casualty Co.,* 19 *Ga. App.* 127 (91 S. E. 228), were both cases involving construction of the word "accident" as used in an accident-insurance policy. As was said by Jenkins, J., in his dissenting opinion to the *Westbrook* case, "It has uniformly been held that the workmen's compensation act must be construed liberally in favor of the workman; and in my opinion the term "accident" as there used, is not to be limited in accordance with some of the definitions derived from provisions of accident insurance policies, but must be taken in its broad and commonly accepted sense." See also the personal remarks of Hooper, J., in the case of *American Mutual Liability &c. Co.* v. *McCarty,* 45 *Ga. App.* 483 (165 S. E. 291). In the last analysis we do not feel that we can follow the

*Westbrook* case, supra, as authority here. If this were a decision by a full bench and we felt we could not follow it, we would feel constrained to certify the matter to the Supreme Court. The *Westbrook* case, supra, is seemingly in conflict with the older adjudication in the *Wallace* case, supra, and, not being by a full bench, and being contrary to our view of the correct construction of the word "accident" as used in the workmen's compensation act, we will not follow it. After taking into consideration the purposes of the workmen's compensation act and the liberal construction to be given thereto, an injury of this character is itself an "accident" which is an unintended and unexpected occurrence which produces hurt or loss; an unlooked for mishap or untoward event which is not expected or designed. We think, therefore, the award of the commissioner in this case was correct and the judge of the superior court erred in setting aside that award.

*Judgment reversed. MacIntyre, J., concurs.*

BROYLES, C. J., concurs in the judgment but not in all the rulings set out in the opinion.