23856. SOUTHERN COTTON OIL COMPANY *v.* McLAIN.

DECIDED MAY 18, 1934.

*Franklin, Langdale & Eberhardt,* for plaintiff in error.
*H. B. Edwards, Jordan Johnson,* contra.

GUERRY, J. On March 12, 1932, LeRoy McLain was em-

ployed by the Southern Cotton Oil Company as a cooker of cotton-seed. On that date he sustained an accident to his eye, from which flowed naturally and unavoidably a disease (these facts being held by a subsequent division of this opinion) which caused him to lose the sight of his right eye. He attended, at the direction of his employer, a physician a few days thereafter, and was discharged on April 30, 1932, as being totally blind in his right eye. His employer, the Southern Cotton Oil Company, made report of the accident in compliance with the requirements of section 3154(111), on March 21, 1932. On May 6, 1932, McLain, the employee, and the Southern Cotton Oil Company, employer, entered into an agreement upon a blank furnished by the Department of Industrial Relations for such purpose, that the employer should pay the employee compensation at the rate of $5 per week for five weeks, representing his total disability from the date of the accident. Among the provisions of the agreement was the following: "We agree that the facts herein stated and the amounts to be paid are in strict accordance with the compensation law; and we further agree to receive and to pay compensation and such other amounts as may be determined from the nature, extent, duration, and result of the injury described herein." The agreement further contained the following question: "Did employee suffer loss of a member or loss of use of a member?" To which the following answer was made: "Loss of use of right eye." This agreement was mailed to the Department of Industrial Relations for its approval. It was received on May 9, 1932. At the time this agreement was executed a physician's report signed by Dr. Thompson was made and mailed, to the effect that his disability resulted from the injury and that he had lost the sight of his right eye. There was also executed and mailed on the same day a final settlement receipt from the claimant to the employer, reciting the receipt of $25 under the agreement above mentioned. This receipt recited that such amount was the "final payment of compensation due me [claimant] under the Georgia workmen's compensation law for all injuries received by me on or about the 12th day of March, 1932, while in the employ of the Southern Cotton Oil Company." On the same day, May 6, 1932, a letter was addressed to the industrial commission, signed P. G. Walker, manager of the Southern Cotton Oil Company, which read as follows: "Industrial Commission of Georgia, Atlanta,

Georgia. Gentlemen: Attached beg to hand you final-report forms in the above case. It will be noted that McLain went blind in his right eye. The original report on this matter to you is dated March 12, 1932, and employee quit work and was paid through March 18, 1932. We beg to call attention to the letter attached, signed by Dr. E. F. Thompson, same dated March 24, 1932. Dr. Thompson points out that the cause of the trouble was an injury to the eye. However, there is no record of this employee having received this injury while in our employ. The report above of March 12 is the date of him having complained of getting meal in his eye. However, as stated above, if the original injury to this eye was received here none of us know anything about it, and so far as we know this original injury to the eye was not received here. Dr. Thompson also points out that if the negro had been in good physical condition the infection would not have developed. Mc-Lain is now at work at our plant and is capacitated to do the work we have as well as he ever did.

"We wish to point out that the manufacture of cottonseed and grinding of meal is more or less of a 'dusty' business—dust is more or less prevalent at all times. All employees are well acquainted with this fact, and it is necessary several times each day for those at work in the plant to keep the eyes cleansed—in fact, if every time meal or a little dust got in the eye and the cost proportionate to this case, I doubt if the business could be carried on. It is our contention, and sincere belief, that we were really not liable in this case, at least no further than we have already gone, as the cause of his trouble happened elsewhere than at our plant, and his physical condition was at low ebb, both conditions being beyond our control. Asking for an especial ruling on the matter, we are, Yours very truly, The Southern Cotton Oil Company."

On receipt of the above-mentioned papers, and on May 20, 1932, a letter from the Department of Industrial Relations, by Sharpe Jones, its secretary and treasurer, was addressed to the Southern Cotton Oil Company, which read as follows: "Southern Cotton Oil Co., Valdosta, Georgia. Gentlemen: This will acknowledge receipt of your letter inclosing memorandum of agreement as to payment of compensation, supplementary return to work report, report of medical expense and final settlement receipt in the above case. In view of the description as to how this disability occurred

it does not appear that it is an accident within the meaning of the compensation act, but rather an 'occupational disease.' If the employee is entitled to compensation for temporary total disability, he is also entitled to compensation for any permanent disability initiated or caused by the alleged accident. If he is not entitled to compensation for the loss of his eye, he is not entitled to compensation for the temporary total disability. In view of the doubt as to whether this is a compensable case, we are not approving the agreement at this time, but ask that you advise us if you are willing to voluntarily make payment for the loss of vision in the eye. Yours very truly, Department of Industrial Relations." After further correspondence, the department, through Sharpe Jones, its secretary, wrote: "In view of the circumstances, we are retiring our file on this case subject to its being reopened in the event claim is made by the employee."

The matter remained in abeyance until March 14, 1933, when the Department of Industrial Relations received the following notice: "Department of Industrial Relations, Atlanta, Georgia. Gentlemen: Re LeRoy McLain (colored) vs. Southern Cotton Oil Co., Valdosta, Georgia. In March, 1932, LeRoy McLain, of 421 Mills street, Valdosta, Ga., lost his eye while working for the Southern Cotton Oil Company, Valdosta, Georgia, for which they have failed to make settlement. I will ask that you set this case for a hearing at your convenience. With kind regards, I am, Yours very truly, H. B. Edwards." A hearing upon the matter was set for April 19, 1933. After evidence was finished at the hearing the defendant's attorneys made a motion to dismiss the claim, upon the grounds, (1) that it appeared without dispute from the evidence that the injury was received by the claimant on March 12, 1932, and that claim was not filed until March 15, 1933; therefore under § 25 of the act, requiring all claims to be filed with the Department of Industrial Relations within one year from the date of the accident, such claim was barred; (2) that it appeared from the evidence before the director that the claimant suffered no accident, but that the claimant suffered an occupational disease that did not naturally and unavoidably result from an accident. The director thereafter rendered his decision overruling both grounds of the motion and awarding compensation to the claimant in accordance with the act. This award was appealed to to the full board, which ren-

dered an opinion affirming the award of the director, one dissenting opinion being filed. This ruling was appealed to the superior court and again affirmed; to which action the defendant excepts in this court.

We will consider first the first question raised by the motion, that is, whether the claim was barred under section 25 of the workmen's compensation act. That section provides: "The right to compensation under this act shall be forever barred, unless a claim be filed with the Industrial Commission within one year after the accident, and, if death results from the accident, claim therefor is filed with the commission within one year thereafter." It appears that the injury or accident to the claimant occurred on March 12, 1932. The letter of H. B. Edwards requesting a hearing was not received by the commission until March 18, 1933. Therefore, if no other claim was filed with the commission in compliance with section 25 of the act, this court must hold the right of the claimant to compensation barred. The requirement of section 25 of the act that a claim must be filed within one year from the date of the accident is jurisdictional. *Bussey* v. *Bishop,* 169 *Ga.* 251 (150 S. E. 78, 67 A. L. R. 287) ; *U. S. Casually Co.* v. *Smith,* 162 *Ga.* 131 (133 S. E. 851). It is an essential element of a right to make a claim. "The workmen's compensation act of this State creates a new right of action, one not existing at common law, of which the requirement that actions for the enforcement thereof shall be filed with the Industrial Commission within one year from the date of the accident is an essential ingredient; and the right ceases and terminates where the claim is not so filed." *Bussey* v. *Bishop,* supra. The workmen's compensation act is a remedial statute, and must be given a liberal construction. *Van Treeck* v. *Travelers Insurance Co.,* 157 *Ga.* 204 (121 S. E. 205) ; *Pinkerton National Detective Agency* v. *Walker,* 30 *Ga. App.* 91 (117 S. E. 281). Such liberal construction of the act can only be had where judicial interpretation is necessary (*Austin Brothers Bridge Co.* v. *Whitmire,* 31 *Ga. App.* 560, 121 S. E. 345), and the act should not be so liberally construed as to defeat the purposes and intents of the legislation. The Department of Industrial Relations is purely an administrative body, created solely for the purpose of administering the act as therein provided. "It possesses only such jurisdiction, powers and authority as are conferred upon it by the legis-

lature, or such as arise therefrom by necessary implication to carry out the full and complete exercise of the powers granted. It has a procedure which was conferred on it by the legislature of the State." *Gravitt* v. *Georgia Casualty Co.*, 158 *Ga.* 613 (123 S. E. 897). Therefore the proceedings to be instituted to obtain the benefits of the act are *only* those prescribed by the act, and "are restricted to the exact channels of the act." *Threatt* v. *American Mutual Liability Insurance Co.*, 173 *Ga.* 350 (160 S. E. 379); *Bishop* v. *Bussey*, 164 *Ga.* 642 (139 S. E. 212).

It appears that on May 6, 1932, an agreement was entered into between the employer and the claimant, providing for the payment of five weeks' compensation, which represented payment for temporary total disability. The department, first doubting the compensable nature of the claim, and ascertaining from the agreement and the doctor's report that the claimant had lost the sight of his eye, and would therefore be entitled to compensation for the loss of his eye if entitled to compensation as recited in the agreement, and there being also enclosed a final settlement receipt reciting that the payment of $25 under the agreement was "the final payment of compensation due me [claimant] under the Georgia workmen's compensation law for all injuries received by me on or about the 12th day of March, 1932, while in the employment of the Southern Cotton Oil Company," did not approve the settlement, awaiting to see if the employer would agree, under the claim, to payments for the loss of the use of his eye, in accordance with the provisions of the act. No further official action was taken by the department with reference to the matter.

If this agreement can be considered as taking the place of a formal claim on the part of the employee, we are of the opinion that the department retained jurisdiction over the matter and properly held that the claim was not barred. The act, by § 19, encourages settlements between the employer and employee of claims arising under the act, so long as the amount of compensation, the time, and the manner of payment are in accordance with the provisions of the act. It further provides for the *filing* of such agreements *subject to its approval*. Where such procedure is taken, the approval of the department acts as a judgment, the same as if a hearing had been had. *U. S. Casualty Co.* v. *Smith*, 34 *Ga. App.* 363 (129 S. E. 880). The agreement itself, which was fur-

nished by the department, provided: "We agree that the facts herein stated and the amounts to be paid are in strict accordance with the compensation law; *and we further agree to receive* and *to pay compensation and such other amounts as may be determined from the nature, extent, duration and result of the injury described herein."* We are therefore of the opinion that the agreement submitted took the place of the filing of a formal claim on the part of the employee, and that, never having taken any affirmative action with reference to it, it retained jurisdiction and could properly call a hearing thereon after notification from the employee.

In the administration of the workmen's compensation act, technical nicety of pleading and procedure is not required. *Maryland Casualty Co.* v. *Gill,* 46 *Ga. App.* 746 (169 S. E. 245). No settlement is effective without the approval of the industrial department. *Department of Industrial Relations* v. *Travelers Insurance Co.,* 177 *Ga.* 670 (170 S. E. 883). We think the case is sustained by the fact that the department did not judicially determine the rights of the claimant by an approval or rejection of the agreement and final receipt, but retained jurisdiction of the matter waiting further action by the parties. Had they formally approved it, it would be reviewable only upon a change in condition. Section 45. See also *U. S. Casualty Co.* v. *Smith,* supra. If they had judicially rejected it, we construe the law to be that the claimant would have had to file a claim for compensation for his injuries before the expiration of a year from the date of the accident. Section 4381 of the Civil Code, prescribing that where a suit is dismissed a renewal may be had within six months, has no application under the workmen's compensation act. See, in this connection, *Chamlee Lumber Co.* v. *Crichton,* 136 *Ga.* 391 (71 S. E. 673) ; *Parmelee* v. *Savannah, Florida and Western Ry.,* 78 *Ga.* 239 (2 S. E. 686) ; *Porter* v. *Liberty Mutual Insurance Co.,* 46 *Ga. App.* 86 (166 S. E. 675). The department properly held that the claim was not barred.

■ The next contention of the employer, the defendant, is that the employee, the claimant, did not suffer an accident within the meaning of the act, but suffered an occupational disease, and that therefore he was not entitled to compensation. The evidence shows that the claimant was employed by the defendant as a cooker of cottonseed in its plant. It appears that from the nature and

character of his work he was at all times subjected to flying particles of "cottonseed meal," and that it was a usual and natural thing for such particles to get in the eye. The testimony of the claimant on this question was substantially as follows: "I was working for them at the time I had some trouble with my eye. I don't remember exactly when it was, but I went to see Dr. Thompson in March (1932). I was injured just before I went to see him. As to how my eye got hurt—how it happened, some of the meal dust got into it. I would rub it and it got worse and worse. I don't know what was in the meal. I was cooking meal in cookers, but the place where it injured me was where I was feeding it in the elevator. When I fed it in, the dust from the elevator got in my eyes. My eye continually got worse from that time on until I lost the sight of it. Q. How long did the meal get in your eye before it began to hurt you? A. I don't know, sir. Q. You don't know when that meal got in the eye? A. I know it got in there and I would try to rub it out. Q. Did that happen more than one time? A. Yes, sir. Q. Didn't it happen just about every day? A. Yes, sir. Q. So it was not any one particular time that it happened at all? A. No, sir. Q. It just happened all along? A. Yes, sir. Q. You just rubbed your eyes all along? A. Yes, sir. I tried to get it out. Q. You rubbed them some every day, didn't you to get that meal out? A. Yes, sir, when it got in there. Q. And it got in every day? A. Yes, sir. I couldn't keep it out. Q. If you worked there, it just had to get in? A. Yes, sir. I couldn't help that. Q. You either had to quit work or keep getting meal in your eyes? A. Yes, sir." Dr. E. F. Thompson testified: "I live in Valdosta, Georgia. I am a practicing physician and have been here four years in March. I know LeRoy McLain. He came to me for treatment in February and again in March last year (1932). The first time I treated him, he had a mild conjunctivitis. That is what we call a catarrhal form of the conjunctiva or the covering of the eye. There are numerous causes for that. Dust would cause it, or acid, or any form of irritation. It was from February to March 13 (1932) before I saw him again—a month and three days. *When he came back the second time I treated him for pneumococcic ulcer of the right* cornea. At that time he had an ulcer of the right cornea complicating conjunctivitis. He told me he had been getting cottonseed meal in the eye and had

been rubbing it out and had made a habit of rubbing it out with the back of the hand. I made a slide from the discharge and examined that under the miscroscope, to determine what caused the germ, or the germ that caused the inflammation. I found the pneumococcus germ present. It is always about the head somewhere, usually in the throat or nose. If that germ comes in contact with acid, the chances are that, if it is strong, it will kill the germ. I had treated his eye from March 13 until April 30, 1932. The treatment I gave him when he first came to me would not cause loss of the eye unless he got something in it to aggravate that condition. He came to me later and informed me that he had got some meal in his eye and it was inflamed. It had all the earmarks of an inflammation. I treated it for a while and he lost the eye. When LeRoy McLain first came to my office, it was on March 13, 1932. The history he gave me was that he got cottonseed meal in the eye every day. He rubbed it and scratched it for about three days before he saw me. The pneumococcus caused the disease. The pneumococcus usually follows an injury, say a slight abrasion. It wouldn't take effect on the eye unless the eye had been injured or scratched."

Clearly the claimant suffered an accident within the meaning of the workmen's compensation act. It is true that he intentionally rubbed his eye in an effort to extract the meal, but certainly he did not intend that it should scratch his eye. It was an unexpected result from an intentional act, which our courts have held to be an accident within the meaning of the workmen's compensation act. The testimony of Dr. Thompson shows clearly that the germ that caused the disease infests the head and would only attack the eye where there was an abrasion or scratch on it. It was an injury received while in the course of the employment; it was unexpected and was the unusual effect of a known cause, which was undesigned by the workmen. The disease was clearly shown to have flown naturally and unavoidably from the injury. We are therefore of the opinion that the award is correct. See *Brown* v. *Lumbermen's Mutual Casualty Co.*, 49 *Ga. App.* 99 (174 S. E. 359), and cit.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. It clearly appears from the record

that the claim in this case was filed with the Department of Industrial Relations more than a year after the alleged accident, and that no contract or settlement agreement, *approved by the Department of Industrial Relations,* had been entered into between the employer and the claimant. Therefore there was nothing to toll the statute of limitations, and the Department of Industrial Relations was without jurisdiction to entertain the case.