29520.   WILLIAMS *v.* MARYLAND CASUALTY COMPANY
*et al.*

DECIDED JULY 16, 1942.

*Ringel & Ringel,* for plaintiff.

*T. Elton Drake, Edward B. Lovell, Herman Talmadge,* for defendants.

STEPHENS, P. J.   Julia Williams filed a claim with the Industrial Board against Peoples Water Service Company as employer of her husband, Peter Williams, and Maryland Casualty Company, insurance carrier, in which she contended that her husband sustained an accidental injury resulting in his death while in the employ of the water company.   The employer and insurance carrier resisted the claim on the ground that (1) the employee did not receive an accidental injury while in the employ of his employer, and (2) there were no dependents.   The single director, Hon. Arlie D. Tucker, after hearing evidence rendered an award finding in favor of the claimant.   A petition for a review was filed with the full board.   The board reviewed the evidence before Director Tucker and rendered an award finding that the claimant was the widow of the deceased and his lawful dependent, but further finding "as a matter of fact" and ruling "as a matter of law" that the

employee did not sustain an accidental injury while in the employ of the employer, within the meaning of the workmen's compensation act, denied compensation, and dismissed the claim. From this finding the claimant appealed to the superior court of Glynn County, which affirmed the award of the board. The claimant excepted.

It is contended, that, applying the decisions in *Brown* v. *Lumbermen's Mutual Casualty Company,* 49 *Ga. App.* 99 (174 S. E. 359), and *Lumbermen's Mutual Casualty Co.* v. *Griggs,* 64 *Ga. App.* 448 (13 S. E. 2d, 507), the undisputed facts showed that the claimant's husband sustained an accidental injury while in the employ of the water company which resulted in his death. It appeared that the claimant's husband was employed as a common laborer; that he was with a crew of laborers engaged in working on some pipe that was in a ditch about five feet deep and two or three feet wide; that on September 5, 1940, after sundown, the employee was in the ditch with another employee where they were calking a joint of a pipe; that in order to do this particular work it was necessary to use a hammer and stoop over, so as to drive the lead calking into the joint; and that while so engaged the employee was seen to rise up, wipe the perspiration from his face, and then slump over. He was taken out of the ditch and carried to a hospital where he died without regaining consciousness. The evidence disclosed that the deceased had high blood pressure, as a consequence of arteriosclerosis or hardening of the arteries, and that he also had heart trouble and syphilis of the blood vessels. A physician who had treated him and who was the only medical witness before the board testified that during the period covered by his examinations of the deceased he had grown "progressively worse;" that his blood pressure had gone higher, and that his condition was threatening and critical to the extent that something was liable to happen to him at almost any time; that without treatment he expected the deceased to get progressively worse. There was no evidence that the deceased had undergone any treatments after the last examination by this witness. It was contended by the employer and insurance carrier that there was no injury resulting in death within the compensation act, because it did not appear that the deceased had done any unusual work, such as lifting any extraordinarily heavy object, or had unduly exerted himself in any

way in performing his work. It was contended, and the board so found, that the evidence failed to show any injury at all, but on the contrary showed that the employee's work had nothing to do with his injury and death, and that such injury and death were the natural and inevitable result of his pre-existing diseased condition, and would have occurred regardless of the employment; that is, that the employee would have been stricken and died at the time even if he had not been at work.

In *Brown* v. *Lumbermen's Mutual Casualty Co.*, supra, the evidence showed that the claimant leaned over to pick up a tool and "something happened in his knee which caused him to suffer pain," and disabled him for a short time thereafter, and this court held that the employee's injury arose out of his employment, and stated as follows: "It is true that the employee merely leaned over to pick up a tool; that he did not slip, and that nothing unusual happened, such as some outside physical force which caused the injury. The nature of the injury remains a mystery. There was no medical testimony adduced before the director hearing the case, and nothing to show why in leaning over in the normal way the injury happened. . . The particular injury complained of need not have been foreseen or expected, but it is sufficient if, after the injury, it can be traced to the employment as a contributing cause. . . An injury received while in the course of the employment and in the performance of an act connected with the employment, which injury is unexpected and which may proceed from an unknown cause, or is the unusual effect of a known cause, is an injury caused by accident which is compensable under our law. . . If the occurrence is sudden, unexpected, and undesigned by the workman it comes within the provisions of the acts."

The board found as facts, which were authorized by the evidence and which we must assume as being true, as follows: "That the day of decedent's death was not in any way an extraordinarily hot day, . . that the work was not strenuous which might produce injury or death to one on such a day, . . that calking isn't one of the harder types of manual labor, . . that the deceased had not been calking at all during the hot part of the day but only after sundown." The board inferred from these facts that the death had not been due to accident arising out of and in the course of his employment; that his employment, or the pursuit of the

work of his employment, was not the cause of his death, but that he merely slumped over and died in a few hours. This might be a correct conclusion, under the facts, if the deceased had been a normal man or had not been a man seriously diseased as he was. It appears conclusively from the evidence that he was suffering from a serious heart trouble; that he had a syphilitic condition; that he suffered from an enormously high blood pressure and arteriosclerosis; that the company's doctor, on behalf of the company, made several examinations of the deceased and that the company had notice of his diseased condition when he was employed. The undisputed evidence showed that just prior to his collapse the deceased was engaged in manual labor, requiring no small amount of physical exertion, in calking a pipe joint, which involved the raising of a heavy sledge hammer and in a stooped-over position, using the hammer in calking the pipe. No reasonable inference can be drawn other than that the work and exertion of the deceased, in his subnormal and diseased condition, caused the collapse from which he died. The company knew of this condition when the deceased was employed, and worked him in that condition. We therefore conclude, under the undisputed evidence, that the deceased came to his death as a result of accident arising out of and in the course of his employment.

The courts have held that the death of a workman who was suffering from arteriosclerosis, high blood pressure, and heart disease, is compensable under the workmen's compensation act where it appears that he suddenly collapsed while engaged in manual labor requiring exertion, and where such diseased condition coupled with this exertion caused hemorrhage, embolism, or apoplexy, or even a sunstroke. Cole v. Department of Labor, 137 Wash. 538 (243 Pac. 7) ; Frandila v. Department of Labor, 137 Wash. 530 (243 Pac. 4) ; Jones Foundry & Machine Co. v. Industrial Commission, 303 Ill. 410 (135 N. E. 754) ; Pace v. North Dakota Workmen's Compensation Bureau, 51 N. D. 815 (201 N. W. 348) ; Wicks v. Northland Milk & Ice Cream Co., 184 Minn. 540 (239 N. W. 614); Kallgren v. C. W. Lunquish Co., 172 Minn. 489 (216 N. W. 241).

In Chicago & Alton R. Co. v. Industrial Commission, 310 Ill. 502 (142 N. E. 182), the Supreme Court held that the death of an employee from a pre-existing disease or condition which was aggravated or accelerated by work being performed by him, was

caused by an accident. An interesting and instructive discussion of this subject is found in the House of Lords' case, Clover, Clayton & Co. v. Hughes, 26 Times L. R. 359, where in the opinion of the Lord Chancellor he said: "A workman, while engaged in tightening a nut with a spanner, strained himself and thereby ruptured an aneurism of the aorta which caused his death. A post-mortem examination showed that the aneurism was in such an advanced condition that it might have burst while the man was asleep, and that very slight exertion or strain would be sufficient to bring about a rupture. . . I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. . . If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described. . . An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health."

In Pace v. North Dakota Workmen's Compensation Bureau, supra, the court held that "a physical impact is not a necessary prerequisite to an 'injury' within the compensation act," and that "in a case of prostration of an employee in the course of his employment, the claimant is entitled to compensation if the excessive or unusual heat was the proximate cause of the collapse and the subsequent bursting of a blood vessel which resulted in death." In Frandila v. Department of Labor, supra, it appeared that the workman was employed to assist in digging a ditch for a sewer; that he went to work at one o'clock in the afternoon; that about three hours thereafter he was noticed by the foreman to stop chopping on a root at the bottom of the ditch, which was then some four and one half feet deep, throw away his ax, lean against the ditch side and collapse; and that he was picked up and brought out onto the sidewalk where he died in about fifteen minutes. It appeared that the workman was suffering from hardening of the arteries, and that he died from either a rupture of a blood vessel or embolism. The department of labor and industries disallowed the claim of the widow, an appeal was taken to the superior court which reversed the finding of the department, and from that de-

cision an appeal was taken to the Supreme Court of Washington where the action of the superior court was affirmed. To the same effect see Cole v. Department of Labor, supra. Thus the fact that the employee was suffering from a disease which predisposed him to a cerebral hemorrhage, so that he might have died from that cause within a short time even while in bed, does not prevent the bursting of a blood vessel as the result of an exertion during employment from entitling his dependents to compensation. Patrick v. J. B. Ham Co., 119 Me. 510 (111 Atl. 912, 12 A. L. R. 427).

The award denying compensation made by the board was without evidence to support it. No other issue is presented for decision. The judge erred in not sustaining the appeal of the claimant.

*Judgment reversed. Sutton and Felton, JJ., concur.*