### 39178.   SHIPMAN v. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY *et al.*

DECIDED FEBRUARY 15, 1962—REHEARING DENIED MARCH 9, 1962.

*Ward, Brooks & Williams, Cullen M. Ward,* for plaintiff in error.

*Smith, Swift, Currie, McGhee & Hancock, Glover McGhee,* contra.

EBERHARDT, Judge.   E. L. Shipman applied to the State Board of Workmen's Compensation for a hearing to determine his right to compensation on account of a loss of hearing in each

of his ears which he asserted had resulted from his employment as a flight-line mechanic at Lockheed Aircraft Corporation. Upon the hearing, it appeared from the evidence that claimant had been continuously employed as a flight-line mechanic with Lockheed since some time in 1953 until he was shifted to another job in August of 1959. His work had required that he work in close proximity to jet aircraft engines, which are operated intermittently for test purposes, and which while in operation produce terrific noises. While not continuous, the operation of the engines was frequent and regular, occurring each day. In January, 1959, claimant began to notice a loss of hearing. Employees of the plant were given medical checkups at fairly regular intervals, and his loss of hearing began showing up on audiometer tests made by the plant medical department. From January through June, 1959, successive tests disclosed progressive and increasing loss of hearing, which were rated by the audiometer test as being 51 per cent in the right ear and 34 per cent in the left ear by June. Medical witnesses for both the employee and the employer testified at the hearing, and they were in agreement that "for all practical purposes" claimant had lost his hearing in the right ear, though the loss in his left ear was somewhat less; that, as to his right ear, he could not hear sound ordinarily and normally produced, as by conversations and the like, though it was possible for him to hear sound at ranges of pitch out of the usual and ordinary. Claimant's expert witness, an otologist, testified that the hearing loss was typical of "nerve deafness due to noise trauma." The company medical director testified that it was his opinion that claimant's hearing loss was unusually rapid "due to a loss produced by noise."

The insurer defended on the ground that there had been no accidental injury within the meaning of the act, and further that even though it be found that such had occurred, it was not compensable under the provisions of *Code Ann.* § 114-406(r) as amended (Ga. L. 1955, p. 212; 1958, p. 360).

The issue before us, then, is whether the *result* (here, loss of hearing) of a *series of trauma* (here, intermittent noises of the jet engines over a period of time) is an accidental injury, and,

if so, whether it is compensable if the loss of hearing is "for all practical purposes" complete.

We have heretofore held that "a *traumatic* disease, as distinguished from an ideopathic [sic] disease, is one which is caused by physical injury and is compensable." (Emphasis supplied.) *Griggs v. Lumbermen's Mutual Cas. Co.*, 61 Ga. App. 448, 450 (6 SE2d 180), aff'd 190 Ga. 277 (9 SE2d 84). Moreover, it is settled that a physical impact is not a necessary prerequisite to an "injury," the result on the employee being the test. *Williams v. Maryland Cas. Co.*, 67 Ga. App. 649 (2, 3) (21 SE2d 478); *Georgia Power Co. v. Reid*, 87 Ga. App. 21 (74 SE2d 672); *Orkin Exterminating Co. v. Wright*, 92 Ga. App. 224 (88 SE2d 205); *Ideal Mut. Ins. Co. v. Ray*, 92 Ga. App. 273 (88 SE2d 428); 1 Larson, Workmen's Compensation Law, § 38.61 (1952). The medical testimony here indicated that each time an engine was run on the flight line a traumatic reaction occurred in claimant's ear.

In Kansas, where there is a statute substantially identical with ours in this respect, a similar situation was presented in Winkelman v. Boeing Airplane Co., 166 Kan. 503 (203 P2d 171). The employee in that case was an assistant instructor of guards at the company pistol range practice. In that employment he was subjected to hearing pistol shots on the range each working day for 18 months. His hearing failed, and he filed a common-law action against his employer to recover for his permanent loss of hearing. The company defended on the ground that plaintiff's sole remedy was under the workmen's compensation statute. The court agreed, holding, as had been established by the medical testimony, that each pistol shot had a traumatic effect upon the hearing mechanism of claimant's ears, and further holding that it was not necessary to point to the particular shot that had caused his deafness, applying the "result on the employee" test used in *Williams v. Maryland Cas. Co.*, 67 Ga. App. 649, supra. In the course of the opinion the court observed: "Manifestly each pistol retort or explosion, at the time it occurred, caused some injury and contributed to the permanent injury. The proof of injury was probably as definite, relative to time, place and circumstances, as the na-

ture of the case permitted. At least we think it was as definite as the particular circumstances required. The statute does not mention the word 'time' except that the injury by accident must arise in the course of the employment. It did so arise. If injury occurring as the result of a single accident is compensable, surely we will not declare that injury resulting from a dozen or more of the same or similar accidents, all occurring in the course of the employment, is noncompensable."

More recently the Supreme Court of Tennessee had before it the case of Brown Shoe Co. v. Reed (Tenn.) 350 SW2d 65, arising under their workmen's compensation act which, insofar as is relevant here, is identical in its terms with ours. There the claimant was employed in the operation of a machine in trimming the soles of heavy shoes. In doing that work the repeated jerking and pulling of the left hand and arm by the operation of the machine over a period of months resulted in a numbness of the fingers, loss of sensation, and atrophy. He reported this condition to the First Aid Office of his employer and afterwards sought the advice of his physician. Upon the hearing the doctor testified that the repeated jerking and pulling of the arm and the resulting repeated movement of the ulnar nerve across the end of the bone was, in effect, a separate traumatic injury to the nerve resulting in a permanent injury. The employer there defended, as here, upon the ground that there had been no *accidental* injury. However, the board found to the contrary, and in affirming the award for compensation the Supreme Court said: "[I]t unquestionably appears from this proof that these repeated injuries to this nerve, no one of which resulted in disabling him, but the accumulation of which, resulted in substantial permanent disability to this arm," and further observed, "While it is true the employee can point to no particular date or a particular blow or jerking, or pulling in running this machine on the heavy soled shoes, which produced the injury, yet it is not necessary that the accident occur at any particular or specific time. The series of jerking or pulling or holding on this to the employee's hand produced the injury and loss which was unintended and an unexpected occurrence." The employer urged that what had happened to the employee

comes in the category of an occupational disease rather than accident, but the court rejected such contentions, as we do here.

The similarities in the instant case and in Winkleman and Brown Shoe Company are obvious. There have been similar applications of the compensation statute to like factual situations —successions of bumps, scratches, jars, etc., in other cases: e.g., Barker v. Shell Petroleum Corp., 132 Kan. 776 (297 P 418); Public Service Co. v. Gillespie (Okla.) 321 P2d 414; W. Shanhouse & Sons v. Sims, 224 Ark. 86 (272 SW2d 68); Beveridge v. Indus. Acc. Comm., 175 Cal. App. 2d 692 (346 P2d 545); Kacavisti v. Sprague Elec. Co., 102 N. H. 266 (155 A2d 183); 1 Larson, Workmen's Compensation Law, § 39.40 (1952); Schneider, Workmen's Compensation (1959 Cum. Supp. Vol. 3, and Supp. Service, § 1454A).

The situation is not altogether new in Georgia. There are at least two such cases in which compensation has been awarded, and we have approved. In *Southern Cotton Oil Co. v. McLain*, 49 Ga. App. 177 (174 SE 726), the claimant continually got particles of dust in his eye and continued to rub it out with his hand or finger. This rubbing, over a period of time, caused the dust particles to scratch the eye, resulting in a loss of sight because of a corneal ulcer. Claimant testified that the particles of dust got in his eye every day, and that he was rubbing it out every day, and that he did not know how long that had gone on before his eye began to hurt. See his testimony at page 184.

The case of *Lumbermen's Mutual Cas. Co. v. Layfield*, 61 Ga. App. 1 (5 SE2d 610) involved the operator of a gas shovel who was jerked and jolted for a period of two or three days by the machine, accompanied by a "constant jarring" of his legs. His physician testified that claimant had developed phlebitis in both legs, the usual cause of which is infection, but that "one could have it purely from trauma without any infection in the blood stream"; and that there was a 50 percent disability in both legs. The board denied compensation, but the superior court reversed, and this court affirmed, saying: "[T]his court holds that the Industrial Board erred, as a matter of law, in finding that phlebitis caused by jarring on a steam shovel for three days was an occupational disease. Any injury caused by

sudden jarring on a shovel over a period of three days is not an occupational disease, but is an injury compensable under the workmen's compensation act."

We have given definitions of "accident" and "accidental means" in headnote one, which need not be restated here. Substantially the same definition is cited by the court in Brown Shoe Co. v. Reed, 350 SW2d 65, supra, and in most of the other cases. But we do not think that it is necessary that the claimant be able to put his finger, as it were, upon the particular occasion when the engine noises left him bereft of his hearing. "The right of a claimant to compensation is not necessarily barred because he cannot definitely fix the date of the accident resulting in his disability, either because he cannot remember the precise time when the accident occurred or because the accident was of such nature that there is difficulty in ascertaining with complete accuracy when it happened." Skinner Poultry Co. v. Mapp, 98 Ga. App. 772, 774 (106 SE2d 825). Accord Ideal Mutual Ins. Co. v. Ray, 92 Ga. App. 273, supra; Carpenter v. Lockheed Aircraft Corp., 93 Ga. App. 213 (2) (91 SE2d 199).

Larson, in dealing with this type of situation, says: "The practical problem of fixing a specific date for the accident has been handled in New Jersey by saying simply that the date of accident is the date on which disability manifests itself. Thus, in the Ptak case [Ptak v. General Elec. Co., 13 N. J. Super. 294, 80 A2d 337], the date of a gradually-acquired sacroiliac strain was deemed to be the first moment the pain made it impossible to continue work, and in the Di Maria case [Di Maria v. Curtis Wright Corp., 23 N.J.M. 374, 44 A2d 688], the date of accident for gradual loss of use of the hands was held to be the date on which this development finally prevented claimant from performing his work." 1 Larson, Workmen's Compensation Law, supra, § 39.50. In a footnote on page 569, summarizing decisions in which compensation has been approved in gradual injury situations, will be found cases from the courts of Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon,

Pennsylvania, South Dakota, Tennessee, Texas, Utah, Washington and Wyoming. We do not feel, therefore, that we are embarking upon any new or untried path, or that we are in any lonely situation in the view which we here assert.

The evidence as to the extent of claimant's loss of hearing was that for all ordinary and practical purposes he was totally deaf in his right ear, though it was possible for him to hear some sound at ranges of pitch out of the normal, usual, and ordinary. He had suffered a loss to a lesser extent in his left ear. It is urged by the insurance carrier that, even though it be held that claimant has suffered an accidental injury resulting in a loss of hearing, it would not be compensable under the terms of the act (*Code Ann.* § 114-406(r), as amended, Ga. L. 1955, p. 212; 1958, p. 360). With this we can not agree. The act is related to industry and makes provision for compensation to employees in industry who have suffered injuries in the course of employment. The rule of liberal construction prevents us from giving a word used in the statute a restricted or literal meaning which would defeat its purposes. *Lumbermen's Mut. Cas. Co. v. Griggs,* 190 Ga. 277, 287 (9 SE2d 84); *Gazan v. Heery,* 183 Ga. 30 (1, 3) (187 SE 371, 106 ALR 498). We have not found a case dealing with this particular provision of the act, but there are many cases in other jurisdictions in the comparable area of loss of eyesight wherein it has been held that "total loss of vision" as used in the act means the loss of *industrial* use of the eyes, or *industrial* blindness—not absolute and total inability to see. See 58 Am. Jur. 784, Workmen's Compensation, § 290; 99 CJS 1132, Workmen's Compensation, § 316; Annot. 142 ALR 822; Kilgore v. State Workmen's Ins. Fund, 127 Pa. Super. 213 (193 A 294). We think a similar construction is proper here. If claimant is, as the doctors have testified, for all ordinary and practical purposes unable to hear by his right ear, he has lost his industrial hearing in it. It is, for that purpose and use, a complete loss of use and is compensable.

This case was considered by the full court.

*The judgment of the Superior Court is reversed with direction that the matter be remanded to the board for further findings and award. All the Judges concur, except Carlisle, P. J., Frankum, and Jordan, JJ., who dissent.*

CARLISLE, Presiding Judge, dissenting. While the opinion written by my able associate is most persuasive and well reasoned, I do not think that this court can reach the conclusion which it has in this case without ignoring or disregarding precedents which are binding as authority and which demand, at least to my mind, a contrary result. The only Georgia cases cited by the majority opinion as authority for the ruling now made are *Southern Cotton Oil Co. v. McLain*, 49 Ga. App. 177 (174 SE 726), and *Lumbermen's Mutual Cas. Co. v. Layfield*, 61 Ga. App. 1 (5 SE2d 610). In the *McLain* case, it is true that upon reading the cross-examination of the claimant, quoted on page 184 of 49 Ga. App., it appears that the employer sought to contend that the loss of the claimant's eye there was caused by a continuous existing condition of his employment, rather than by an accident, but the court interpreted the evidence as showing otherwise. This is so because the first headnote of that case states that the employee suffered an accident on March 12, 1932. That opinion, therefore, must be assessed as a precedent by taking into consideration this statement of the facts as interpreted by the court which had the case under consideration, and I do not think that the opinion and judgment rendered in that case can be viewed as based on any premise other than that of an accidental injury which occurred at a specific time. Likewise, in the *Layfield* case, the evidence showed a series of definite and distinct accidental injuries resulting in the disability claimed.

If these cases, however, are to be interpreted as authorizing the view here taken, I think they must yield to older and higher authority. In *Simmons v. Etowah Monument Co.*, 42 Ga. App. 633 (157 SE 260), which was, of course, prior to the enactment of the occupational disease statute, this court had for consideration what seems to be the first recorded case involving the disease of silicosis in this State. It was held that the gradual lodging in the employee's lungs of particles of dust inhaled by him over a period of time did not constitute an injury by accident, as that term is used in the act. A similar question was presented to the Supreme Court in *Berkeley Granite Corp. v. Covington*, 183 Ga. 801 (190 SE 8), wherein the court had for

consideration the decision of the Court of Appeals (53 Ga. App. 269, 185 SE 386) holding that the disease of silicosis which was contracted by the employee over a period of time in the breathing of dust created as a condition of the employment did not constitute an accidental injury within the meaning of the Compensation Act. In affirming that decision, the Supreme Court referred at page 807 to the earlier Court of Appeals decision in *Simmons v. Etowah Monument Co.*, supra, and adopted as a correct interpretation of the meaning of the statute the ruling there made. Both this court and the Supreme Court have held consistently prior to the enactment of the occupational disease statute (Ga. L. 1946, p. 103 et seq.; *Code Ann. Ch.* 114-8), and since the enactment of that law with respect to occupational diseases not expressly covered therein, that an occupational disease contracted as the result of long continued exposure to conditions of the employment, as distinguished from one contracted as the result of an injury traceable to a definitely established accidental occurrence, is not compensable. In all of the decisions of the courts of this State heretofore rendered, the courts have consistently adhered to the view that the definition of the term "injury" or "personal injury" defined in the act as meaning only the injury by accident (*Code Ann.* § 114-102) embodies therein the concepts of suddenness, unexpectedness, and definiteness of occurrence in time and place so as to preclude the award of compensation for a gradual injury, even though the result of trauma. See, in this connection, the cases cited by the director in support of his award denying compensation, to wit, *Lumbermen's Mutual Cas. Co. v. Lynch,* 63 Ga. App. 530 (11 SE2d 699); *Martin v. Tubize-Chatillon Corp.,* 66 Ga. App. 481 (17 SE2d 915); *Peerless Woolen Mills v. Pharr,* 74 Ga. App. 459, 467 (3) (40 SE2d 106); and *Lumbermen's Mutual Cas. Co. v. Griggs,* 190 Ga. 277 (9 SE2d 84). If the gradual lodging or accumulation of small particles of dust in the lungs of an employee is not a traumatic injury within the meaning of that term as used in the act, I cannot see how the mere impinging of an intense noise on the eardrums of the employee can be held to be traumatic, and, therefore, accidental within the meaning of the act. I do not think that the decision of the majority

is sustained on the authority of either *Southern Cotton Oil Co. v. McLain*, 49 Ga. App. 177, or *Lumbermen's Mutual Cas. Co. v. Layfield*, 61 Ga. App. 1, both supra.

Furthermore, to my mind, the injury in this case does not fall within the definition of "accident" stated by the majority in the first headnote. Conceding for the sake of argument that the injury here involved resulted from traumatic occurrences, I do not think that under any view it can be described as an "unlooked-for mishap, and untoward event," or an event not expected or designed. Neither can the injury be said to be one which does not ordinarily follow the exposure to noise of the character described in the evidence, nor can it be said that it would not be a result reasonably to be anticipated from exposure to such noise.. The court can take judicial notice (see 31 CJS 661, et seq., Evidence, § 79) of the fact that long exposure to loud noise results in deafness, at least ofttimes temporary deafness, and permanent if the exposure is lengthy enough. The injury here in question fits more readily into that class of events, which naturally result from conditions encountered in the employment. The claimant's loss of hearing was due to his long and continued exposure to excessive noise, which was incidental to and a condition of his work. That he was, therefore, suffering from an industrial disease, to my mind admits of little doubt.

"The word 'disease,' as a general term, may be defined as any alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions (Webster's Dictionary; 18 CJ 1139), and in this broad sense a portion of the body might be said to be diseased when it ceases to perform its proper functions, although the disorder therein may be the mere result of some affection or malady which in its primary operation is restricted to a different area." *Pilgrim Health &c. Ins. Co. v. Gomley*, 40 Ga. App. 30, 34 (148 SE 666). Int. Brotherhood v. Rodriguez (Texas Civ. App.), 193 SW2d 835, 840; Life Ins. Co. of Va. v. Mann, 28 Ala. App. 425 (186 So. 583, 585); Order of the United Commercial Travelers &c. v. Nicholson, 9 F2d 7, 14 (4). Judge Sibley stated the rule applicable to the facts of this case succinctly in Maryland Cas.

Co. v. Broadway, 110 F2d 357, 359, when he said: ". . . The injury must be attributable to some definite occurrence; one must be able to assign it a time and place and cause. If it arises gradually, over a long period, with no particular happening to attribute it to, it is only a disease, though caused in a general way by the work. If it is a disease that commonly is caused by such work, it is an occupational disease, which is not compensable. But if the bodily injury is referable to a definite occurrence or series of occurrences in the work, to which a time and place can be assigned, it may be compensable though it does not result instantly." Under the evidence in this case the director was authorized to find that the claimant here was suffering from an occupational disease. I do not think that this court is authorized, no matter how strong our sympathy for the injured man may be, to disregard clear expressions by this court and by the Supreme Court of the court's interpretation of the meaning of "accident" and "accidental injury" and to go outside and base its decision on authorities from other jurisdictions which are not controlling as precedents on this court. Admittedly, the question now before this court is one of first impression, but the principles applicable to the question have been clearly laid down by prior decisions of this court and of the Supreme Court. The legislature has had ample opportunity over the years, if it deemed the judicial interpretation of the terms "accident" and "accidental injury" as used in the act to be too narrow and restricted, to amend the act so as to more clearly define those terms. This the legislature has not seen fit to do and I do not think this court ought, under the guise of judicial decision and basing its decision on authorities not binding on it as precedent and disregarding authorities which I deem to be binding on it as precedent, undertake to amend the act. This I feel the majority opinion does, and for these reasons I must dissent therefrom.

I am authorized to say that Judges Frankum and Jordan concur in this dissent.