224 A.2d 893.

WILLIAM PILKANIS *vs.* LEESONA CORPORATION.

DECEMBER 16, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.  This petition, although entitled "Employee's Petition to Review and/or Amend Agreement or Decree Concerning Compensation," is in reality a petition for specific compensation wherein the employee seeks benefits either under G. L. 1956, §28-33-19(1) as amended, for the complete loss of hearing in his left ear or alternatively, under §28-33-19(m) as amended, for a percentage loss of hearing.  It comes to us on the employee's appeal from a final decree of the full commission affirming a decree of a single commissioner denying and dismissing the petition.

The record is short and the facts undisputed.  The petitioner in 1964 sustained a compensable traumatic ear injury and as a result is now unable to communicate in the standard sense or to discriminate between sounds, that is to say, in ordinary conversation the spoken word comes to him as an unintelligible mumble and conveys no meaning to his mind.  He can, however, with the aid of earphones and under clinical conditions in a testing booth hear certain pure tones.  This impairment is permanent and cannot be corrected by the use of a hearing aid or otherwise.

496

The initial question is what within the contemplation of the statute[1] constitutes a "complete loss of hearing" in one ear. Those words are clearly susceptible of more than a single meaning. Depending on the circumstances, the context and the purposes of their use they may either be given their ordinary and usual meanings or be taken in their absolute and technical sense. An explicit definition appears in a report of an examining physician. He describes a complete loss of hearing as the "auditory state in which no measurable hearing at any frequency can be elicitated by pure tone testing." Measured by that or an equivalent standard petitioner's loss of hearing was fixed by one physician at 67 per cent and by another at 38.4 per cent.

If the words, however, are taken relatively rather than absolutely, and in the light of everyday experiences, rather than from the viewpoint of a literal clinician, then this precise means of measuring the extent of a hearing loss in percentiles becomes unacceptable. In this relative context a person, even though he is able to hear loud, pure tones, is completely bereft of his hearing if he is unable to communicate with his fellow man and is denied those other practical and useful benefits generally associated with man's usual and customary wants, needs, and pleasures. This is the standard by which the majority of the courts test entitlement under an insurance contract to the specific benefit payable for a complete or total loss of sight. They hold that the entire sight of an eye is lost, although it is not completely destroyed, if what remains is of no practical use or benefit. *International Travelers' Ass'n* v. *Rogers,* Tex. Civ. App., 163 S.W. 421; *Tracey* v. *Standard Accident*

---

1. Section 28-33-19, as amended, provides generally for the payment of additional and supplementary weekly benefits to workers who sustain certain specific injuries. Subsection (1) provides that such benefits shall be paid for sixty weeks to an employee who by reason of external trauma sustains "complete loss of hearing of either ear * * *."

*Ins. Co.*, 119 Me. 131; *Pan-American Life Ins. Co.* v. *Terrell*, 29 F.2d 460; *Clark* v. *Standard Accident Ins. Co.*, 43 Cal. App.2d 563.

In a different but related field we considered words of similar import. *Pannone* v. *John Hancock Mutual Life Ins. Co.*, 52 R. I. 95. We analogize from this case not to establish what the words here mean but to show that such words can have a relative meaning which differs from the literal. There the question was coverage under a clause in a disability insurance policy providing for benefits to an insured who might become "totally and permanently disabled * * * so as to be continuously and wholly prevented for life from engaging in any occupation or employment for wage * * *." Holding that an inability to perform each and every one of his former duties was not a necessary precedent to a recovery we said at page 100:

> "The courts have held quite generally that 'total disability' is not to be construed literally. Inability of the insured to do the greater portion, the substantial part, of his work or duty is total disability, but inability to do some one thing or several things constituting a lesser portion of his work is not total disability."

The issue in the case before us obviously is which meaning the legislature intended—the absolute or the relative. Its purpose is clear. It thought not in terms of loud, pure tones, nor of an ability to hear beeps through earphones in the testing booth, nor of an auditory state, but rather was concerned with man's ability to function and fulfill a vital role as a member of society in a workaday world. A legislature so motivated should not and cannot be charged with intending a technical construction which denies specific compensation except in the rare instance where there is an incapacity to hear any one of the approximately 11,000 tones within the hearing range of the human ear. It is far more reasonable to conclude instead that the legislature intended that we give to the words their ordinary,

normal and usual meanings.

With a standard thus fashioned, a complete loss of hearing will not necessarily hinge on whether any useful function or benefit in the practical sense inheres in the ear. We said as much in *Lozowski* v. *Nicholson File Co.*, 92 R. I. 270, where we held that the employee had sustained a complete loss of hearing, although the testimony was that he "had had *practically* a total loss of hearing * * *." (italics ours)

In adopting the relative rather than the literal approach, we do not distort the plain language of the act under the guise of applying the rule of liberal construction, but rather follow the general rule of construction which, absent a clear evidence of a contrary legislative purpose, gives to the words of a statute their natural and ordinary and not their technical meanings. *Broughey* v. *Mowry Grain Co.*, 61 R. I. 221.

The respondent argues that our decisions in *Keyworth* v. *Atlantic Mills*, 42 R. I. 391, *Steele* v. *Darlington Fabrics Corp.*, 78 R. I. 272, and *Charron* v. *Liberty Mutual Ins. Co.*, 93 R. I. 352, militate against our conclusion here. We cannot agree.

In *Keyworth* the pertinent section of the act provided for an award of specific compensation for "the entire and irrecoverable loss of sight of either eye," instead of for the "complete loss of hearing of either ear * * *." There is no significant legal difference between the two. The factual background giving rise to the litigation in that case was that an employee as a result of a compensable injury to his eye was left with only 10 per cent of his normal vision and a stereoscopic vision. Although of no value in any vocational pursuit, his sight retention, restricted though it may have been, was useful to a limited extent and allowed him, for example, to count the fingers of a hand from a distance of fifteen feet and to discern large objects, such as an automobile, coming from his side. We rejected the argu-

ment that an eye so restricted in its vision as to be worthless in the labor market should be equated with one entirely and irrecoverably deprived of sight, and we held that there could be no specific compensation since the eye was still "useful to a limited extent for certain purposes * * *."

We did not, of course, set up any guideposts in *Keyworth* as to the kinds or types of things which must be within the sight potential in order to make the eye "useful to a limited extent for certain purposes." Given the factual framework of that case there was no need to proscribe limitations. This case, however, came to us in the abstract rather than in the concrete as did *Keyworth*, and for that reason we have spelled out in some detail what we mean by "useful to a limited extent for certain purposes." We have not in the process either retreated from or enlarged upon our holdings in *Keyworth*. Its rules are still the rules.

We still hold that a loss of sight or of hearing, even though extensive enough to make the eye or the ear worthless industrially, will not entitle the injured worker to an award of specific compensation for an entire and irrecoverable loss of sight or a complete loss of hearing if he still retains some degree of sight or hearing which is of practical and useful benefit to him in his daily pursuits of any of man's usual and ordinary wants, needs, and pleasures.

The *Steele* case gives us more pause. There the statute provided for specific compensation "Where any bodily member or portion thereof has been rendered stiff so as to be useless," and the employee contended that she was entitled to an award upon showing either a total deprivation of the *normal* use of her injured arm or a residual use so "infinitely small" as to justify its being disregarded. We found that the function of her arm as a useful member of her body had greatly diminished, that some "useful function" still inhered in it, and we denied recovery. In substance, we held that a member which retained some of its natural and proper actions, even though minor or sub-

normal, was not "useless" within the purview of the statute. What causes the difficulty, however, is not our holding for that squares with what we say here, but what we said in summarizing and answering the employee's contention. It appears at page 276 and reads: "The statute plainly states that the stiffness of the member must render it 'useless,' not 'useless for all practical purposes,' and not useless in the sense that the *normal* use has been entirely taken away." That statement, although at first blush apparently inconsistent with what we say here, must be considered in the light of the facts of the case and of the employee's arguments as they appear in her brief. When so viewed it becomes clear that we said only that the uselessness of an arm should not be measured solely by its availability as an aid in obtaining employment and that industrial uselessness would not suffice so long as a member retained some other "useful function." Viewed in this context, *Steele* is in accord, rather than at odds, with what we decide today.

The *Charron* case requires no discussion. For our purposes it is on all fours with *Steele*.

Because we deem it premature at this juncture of these proceedings to decide whether, and if so under what circumstances, an injured worker may be specifically compensated for a percentage of a hearing loss, there remains only the question of the nature of the relief to be granted. The decree appealed from cannot, of course, stand. The commission erred legally in deciding what constituted "a complete loss of hearing." Moreover, the record not being pointed to the standards we have enunciated is incomplete on an essential issue. In these circumstances we cannot dispose of the case finally and therefore justice requires that it go back to the commission for further proceedings and to afford an opportunity to the parties to present further evidence and to the commission to make appropriate findings on the basis of such evidence on the extent to which the employee has by reason of the injury been denied

those practical and useful benefits which the ability to hear will afford to man in his pursuit of his usual and customary wants, needs and pleasures. Once that hearing has been concluded a new decree can be entered based on those findings as well as on each of the findings heretofore made as are consistent therewith. *Stillwater Worsted Mills, Inc.* v. *Mehegan,* 80 R. I. 449.

The petitioner's appeal is sustained, the decree appealed from is reversed without prejudice, and the cause is remanded to the workmen's compensation commission for further proceedings in accordance with this opinion.

*Gunning & LaFazia, Raymond A. LaFazia, John F. McDonough,* for petitioner.

*Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan, Thomas D. Gidley,* for respondent.