GEORGE VOUNISEAS'S CASE.

Suffolk.   May 21, 1974. — March 21, 1975.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Workmen's Compensation Act,* Specific compensation, Rehearing of claim.   *Words,* "Loss of hearing."

Evidence that an employee injured in the course of his employment suffered total deafness in one ear and eighty percent hearing loss in the other and that his hearing ability was so diminished that he had no capacity for the work he was doing at the time of the injury was sufficient to support a finding that the employee had suffered a total loss of hearing for all practical purposes and that he was entitled to an award of compensation for loss of hearing in both ears under the Workmen's Compensation Act. [135-139]

On a motion by an insurer to recommit a claim in a workman's compensation case, it was within the discretion of the Industrial Accident Board and the Superior Court judge to determine whether information contained in a report by a physician who had examined the employee was newly discovered evidence, and there was no abuse of discretion in declining to reopen the proceedings to admit further medical evidence. [139-140]

A report of a single member of the Industrial Accident Board containing specific reference to statements of two medical examiners relied upon by the single member in awarding compensation contained an adequate statement of the findings of subsidiary fact so that recommittal was not required. [140-141]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Hallisey, J.*

*Paul F. X. Powers* for the insurer.

*Anthony D. Pompeo* for the employee.

ROSE, J.   This case arises under the Massachusetts Workmen's Compensation Act and is before this court on an appeal by the insurer from a Superior Court decree awarding the employee compensation for loss of hearing in both ears, pursuant to G. L. c. 152, § 36 (f), as amended

through St. 1966, c. 584. See now G. L. c. 152, § 36 (d), as appearing in St. 1972, c. 741, § 1.[1] The Superior Court decree was in conformity with the decision of the reviewing board, which had affirmed and adopted as its own the findings and decision of the single member. The insurer appeals from the award, arguing that there is insufficient evidence in the record of loss of hearing in both ears to qualify under G. L. c. 152, § 36 (f).

The single member's findings must be sustained unless "wholly lacking in evidential support." *Sutherland's Case*, 2 Mass. App. Ct. 58, 59 (1974). If the findings of the Industrial Accident Board "could be reasonably deduced from the evidence and the rational inferences of which it was susceptible, ... [then] the decision ... must be sustained if there may be found from the evidence any facts or combination of facts that would support it.... The decision of the board is not to be set aside unless a different conclusion is required as matter of law." *Chapman's Case*, 321 Mass. 705, 707 (1947). But see *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1961).

The employee, George Vouniseas, was injured when in the course of his employment he was struck on the head by a cement block. The employee has been receiving total incapacity compensation apart from his claim filed for compensation for specific injuries under G. L. c. 152, § 36,[2] which provided in subsection (f) for compensation "[f]or the loss of hearing of both ears."[3]

---

[1] The 1972 amendment is not applicable, since the injury occurred on November 12, 1970. St. 1972, c. 741, § 2.

[2] The employee was also awarded compensation for disfigurement to his scalp pursuant to G. L. c. 152, § 36 (h), as amended through St. 1966, c. 584. See now G. L. c. 152, § 36 (k). That award is not contested on this appeal.

[3] In general, the purpose of the Massachusetts Workmen's Compensation Act is to compensate an injured employee for the impairment of his earning capacity. However, § 36 recovery for specified injuries is an exception, providing for payment in addition to all other compensation. *Kaczmarczyk's Case*, 328 Mass. 9, 12 (1951). 1956 Ann. Surv. of Mass. Law, § 19.4.

The evidence most favorable to the employee, supporting the single member's finding, was as follows. Doctor Peter H. Dillard, a neurosurgeon,[4] and an impartial examiner to whom the claimant was referred by the Industrial Accident Board, reported: "apparently ... deaf in the left ear, and cannot hear normal watch ticking even against the right ear. . . . This hearing loss is apparently total on the left, and appreciably diminished on the right ... his capacity for the work he was doing at the time of injury is probably nil ... in the long run his capacity for gainful employment will be modified largely by his ability to compensate for his hearing loss." Doctor Bernard Zonderman, an otologist and also an impartial examiner, found: "During the examination, it was noted the patient was obviously reading the interpreter's lips . . .. Audiograms revealed a profound, almost total, deafness in his left ear and about 80 db loss by aid conduction in his better, right ear. No bone conduction could be ascertained in the left ear and the bone conduction in the right ear was poor . . .. It was my impression from his history and examination that this patient has a profound deafness in the left ear and a severe hearing loss in his better, right ear averaging eighty percent loss of hearing."

1. We first consider the insurer's contention that there is no evidence to support the finding of a loss of hearing in both ears. There is no statutory standard by which "loss of hearing" is to be measured.[5] It appears that this is a case

---

[4] The reviewing board denied a motion by the insurer to exclude the use of the report of Dr. Dillard as it pertained to an evaluation of loss of hearing on the ground that "a proper evaluation of loss of hearing lies in the field of otology rather than neuro-surgery." As the insurer has not argued this point in his brief, within the meaning of Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972), we do not consider it.

[5] A House of Representatives minority report, commenting on proposals to add the loss of hearing provisions to the list of specific injuries in section 36, recognized that there is "no provision as to just how the loss of hearing is to be measured." 1947 House Doc. No. 1803, at 10.

of first impression in this jurisdiction and thus requires a careful inquiry as to what was intended by the statutory language "loss of hearing."

The Industrial Accident Board has issued guidelines for § 36 specific injury compensation. In suggesting the amount of compensation to be awarded for the various injuries, the guidelines state the standard for loss of hearing as "total loss of hearing for all practical purposes."[6] Precedent in the case law of this jurisdiction for the adoption of a "loss for all practical purposes" standard in cases dealing with § 36 specific injury claims may be found in *Morley's Case*, 328 Mass. 148, 150 (1951). In that case, the court found that an injured hand was permanently incapable of use where the employee had lost the use of the hand "for all practical purposes." In addition, both parties appear willing to accept this guideline, and the single member applied it in this case.

Total loss of hearing for all practical purposes does not mean that the employee must be unable to hear any sounds under any conditions. See Locke, Workmen's Compensation, § 348, n. 91 (1968). The loss may be classified as total for purposes of this guideline although some degree of hearing is retained. Similar treatment has been given to those portions of § 36 which have employed the language "permanently incapable of use" or similar language as the standard for compensating injuries to a member not involving severance. In *Meley's Case*, 219 Mass. 136, 139 (1914), it was held that to satisfy that standard "[t]he incapacity of use need not be tantamount to an actual severance of the hand; it is enough that the normal use of the hand has been taken entirely away." Accord, *Floccher's Case*, 221 Mass. 54, 55 (1915). Thus, a loss need not be total or complete in a literal sense in order to be compensable, and the Industrial Accident Board's guideline "total loss of hearing

---

[6] As to the weight to be accorded such an administrative guideline see *Cleary* v. *Cardullo's, Inc.* 347 Mass. 337, 343-345 (1964). See generally *Skidmore* v. *Swift & Co.* 323 U.S. 134, 139-140 (1944); Davis, Administrative Law Treatise, § 5.03 (1958). Cf. *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 441-442 (1972).

for all practical purposes" appears to be consistent with the statutory scheme of § 36.

The statutory language found in the workmen's compensation law of Georgia, "complete loss of hearing," Ga. Code § 114-406 (r), would appear to invoke a stricter standard than the Massachusetts language, "loss of hearing." Nevertheless, the Georgia provision has been construed to mean "for all ordinary and practical purposes unable to hear." *Shipman* v. *Employers Mutual Liability Ins. Co.* 105 Ga. App. 487, 493 (1962). In the *Shipman* case, also a case of first impression, the evidence disclosed a fifty-one percent loss of hearing in the right ear, measured by the audiometer test, and medical testimony indicated that for all practical purposes hearing had been lost in that ear. The Georgia court reasoned that since the act was related to industry, the standard of loss of hearing should be related to the industrial purposes and uses of the employee's hearing. *Id.* at 493. In a later case, the same court held that "even if one has some hearing ability in an ear but the ear has none of the hearing ability required of his work, he is deemed to have a 'complete loss of hearing' in the ear for the purposes of workmen's compensation." *Aetna Ins. Co.* v. *Woody,* 118 Ga. App. 819, 820 (1968).[7] In the *Shipman* case, the claimant could not hear ordinary and normal

---

[7] Rhode Island, as did Georgia, rejected a technical definition of "complete loss of hearing" and construed the phrase in a practical sense. *Pilkanis* v. *Leesona Corp.* 101 R.I. 494 (1966). Contrast *Hartlieb* v. *Workmen's Compensation Appeal Board,* 12 Pa. Commonwealth Ct. Rep. 118 (1974). The *Pilkanis* case construed language of the Rhode Island workmen's compensation law, G. L. 1956, § 28-33-19, which also provides compensation for "complete loss of hearing." The Rhode Island Supreme Court formulated a stricter standard than that of Georgia, stating that an injured worker would not be entitled to specific compensation even though the loss was extensive enough to make his hearing worthless industrially, if he still retained "some degree of ... hearing which is of practical and useful benefit to him in his daily pursuits." *Pilkanis, supra,* at 499. Nevertheless, in *Lamont* v. *Aetna Bridge Co.* 107 R.I. 686 (1970), the court implied that losses of only fifty percent in one ear and forty percent in the other would be sufficient, under the *Pilkanis* standard, to warrant a finding of a complete loss of hearing. See also *Lozowski* v. *Nicholson File Co.* 92 R.I. 270 (1961).

sounds with his right ear and upon this evidence and evidence of a fifty-one percent loss in the right ear, a "complete loss of hearing" in that ear was found. In the case before us, Dr. Zonderman's finding of an eighty percent binaural loss would appear to surpass the loss of hearing shown in the *Shipman* case. See also *Aetna Ins. Co.* v. *Woody, supra* · (also sustaining a ruling of complete loss of hearing in one ear upon a finding of a fifty-one percent loss of hearing in that ear). Additionally, Dr. Dillard found that the employee's hearing ability was diminished to the point where his capacity for the work he was doing at the time of injury was probably nil.

The single member, in finding "for all practical purposes ... a total loss of hearing in both ears," took into consideration the type of work the employee did. He was justified in doing so. This is consistent with the purposes underlying § 36 specific injury compensation,[8] and Massachusetts does not neglect consideration of industrial worth in determining

---

[8] See 1956 Ann. Surv. of Mass. Law, § 19.4.

See also 1947 House Doc. No. 1803, at 2-3 indicating that specific compensation was intended to compensate "for loss of possible future increases in earnings that... [an individual] might reasonably be expected to achieve were it not for his handicap and deformity," and for the deprivation of the ability for self-help, i.e. the ability to do chores and errands for which one does not receive income but which are of value to any individual and his family.

Cf. 1949 House Doc. No. 918, and 1949 Senate Doc. No. 580 (bills introduced prior to the 1949 amendment of § 36 by St. 1949, c. 519) containing a proposed amended version of the section, entitled "*An Act to Encourage Rehabilitation* by Providing Extended Payments for Serious Specific Losses" (emphasis supplied).

Some commentators consider the purpose of specific compensation payments to have developed beyond that originally intended. For a discussion of the view that such payments are a means, although often arbitrary, of providing payments to complement the inadequate recovery for wage earning loss, see 1956 Ann. Surv. of Mass. Law, § 19.4. See also Locke, Workmen's Compensation, § 345, p. 413 (1968) ("Although one consideration in providing specific compensation undoubtedly is the presumed effect of such permanent handicaps on the employee's ability to compete with others in the labor market, the main purpose is to provide more adequate compensation for the employee's real loss, in a system which has taken away the employee's common law right of action against his employer for personal injuries").

whether there has been a loss of a bodily function. For instance, reduction of vision to twenty-seventieths of normal, which is fully compensable under § 36, is generally known as the standard for industrial blindness. See *Pizzano's Case*, 331 Mass. 380, 383 (1954).

We conclude that the evidence presented by the two impartial medical examiners, upon which the single member relied in his findings, supports the award of compensation made under G. L. c. 152, § 36 (f), for loss of hearing in both ears. We accept the Industrial Accident Board's guideline of "total loss for all practical purposes" as the applicable standard for evaluating loss of hearing. Evidence of an eighty percent binaural loss of hearing, in particular, provides a basis for holding that the above standard was met.

2. The insurer presented a motion to the reviewing board, seeking to have the case recommitted in order to amplify the record by conducting further tests upon the hearing of the employee and to receive an audiology report of one Dr. Chaves, who had conducted tests on July 20, 1972. In addition, the insurer seeks recommittal so that the single member can make specific findings of subsidiary facts bearing on the question of loss of hearing.

By virtue of G. L. c. 152, § 10, the reviewing board has authority to recommit a proceeding to a single member for the purpose of obtaining additional findings of fact. However, that section also provides that "[n]o party shall as of right be entitled to a second hearing upon questions of fact," and that provision has been construed to mean that the introduction of new evidence is ordinarily a matter within the discretion of the reviewing board. "Commonly there should not be a rehearing." *Lopes's Case*, 277 Mass. 581, 585 (1931), citing *Doherty's Case*, 222 Mass. 98, 101 (1915); *Devine's Case*, 236 Mass. 588, 595 (1921).

The Superior Court has the power to order a rehearing "on the ground of newly discovered evidence, when in accordance with sound practice and settled principles concerning a new trial at common law that course ought to be pursued." *Johnson's Case*, 242 Mass. 489, 495-496 (1922). *Lopes's Case, supra*, at 586. *Sabbagh's Case*, 346 Mass. 504,

507 (1963). "New trials will not be granted on the ground
of newly discovered evidence except upon proof of 'impor-
tant evidence of such a nature as to be likely to have a
material effect upon the result, which could not reasonably
have been discovered before the trial by the exercise of
proper diligence and respecting the production of which
on motion there has been an entire want of laches.' "
*Lopes's Case, supra,* at 586-587, quoting *Berggren* v. *Mutual
Life Ins. Co. of New York,* 231 Mass. 173, 177 (1918).

The Industrial Accident Board denied the insurer's mo-
tion to recommit, and the Superior Court issued a final
decree in conformity with the board's decision. "When the
Industrial Accident Board and a judge of the Superior
Court have decided that there ought not to be a rehearing,
the only question before . . . [us] ordinarily is whether the
record shows an abuse of discretion." *Lopes's Case, supra,*
at 586, citing *Devine's Case, supra,* at 595.

It was properly within the discretion of the board and
the Superior Court judge whether the information con-
tained in the report of Dr. Chaves and his suggestion that
additional tests be conducted was newly discovered evi-
dence, and there was no abuse of discretion in declining to
reopen the proceedings to admit further medical evidence.

An additional ground for recommittal urged by the in-
surer is that the single member made insufficient subsidiary
findings. Broad general findings which do not disclose the
view taken of the facts will be acceptable only where no
contrary inference can be drawn from the evidence. The
reviewing board or single member must set out subsidiary
findings in a form sufficiently explicit so that the correct-
ness of the general findings may be reviewed. See *Rozek's
Case,* 294 Mass. 205, 206-207 (1936); *Demetrius's Case,*
304 Mass. 285, 286 (1939). We conclude that the single
member's report contains a sufficient statement of what
evidence he relied upon in awarding compensation to the
employee under G. L. c. 152, § 36 (f). He refers specifically
to certain statements upon which he relied, i.e. those state-
ments, discussed earlier in this opinion, which were part
of the medical evidence presented by the two impartial

medical examiners. Thus, in the circumstances of this case, the single member's decision, adopted by the reviewing board, contained a sufficient statement of the findings of subsidiary fact upon which he relied in reaching his conclusions to allow us effectively to review the question whether, in reaching those conclusions, he correctly applied the proper legal standards. Contrast *Herson's Case,* 341 Mass. 402, 407 (1960); *Moore's Case,* 330 Mass. 1, 6 (1953).

*Decree affirmed.*