[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 471 
Roscoe Mays filed a complaint for workmen's compensation benefits in the Circuit Court of Marengo County against James River Corporation, alleging that he was owed benefits for the complete and permanent loss of hearing in both ears. Following an ore tenus proceeding, the trial court entered judgment in favor of Mays. James River appeals.
In July 1958 Mays commenced work as a millwright at the paper mill operated by Marathon Southern Corporation in Naheloa, Alabama. In 1962 while working at the mill under the employment of its new owner, American Can Company, Mays was injured when a valve on a recovery boiler opened and released 850 pounds of steam pressure, causing dizziness and ringing in his ears. At the time, Mays was diagnosed as having a bilateral perceptive deafness, or nerve deafness. A 1962 audiogram result was consistent with a traumatic hearing loss injury. Mays started wearing a hearing aid in 1962.
In 1978 Mays had another audiogram performed. In reviewing the results of that test, Ms. Moulin — Mays's expert — testified that Mays had gone from a moderate loss of hearing to a profound loss of hearing. A 1979 audiogram result showed that the right ear had remained the same but that there had been a slight deterioration in the left ear.
James River purchased the mill from American Can Company in July 1982. At the time of purchase Mays was employed at the mill as a millwright. Mays retained that position after the purchase. He continues to work at the mill as a millwright at the present time. It is not disclosed whether Mays received compensation benefits for the initial injury.
As a millwright, Mays works in various locations in the mill, repairing machinery. He testified that he repairs operating machinery as well as nonoperating machinery. He stated that when he repairs nonoperating machinery the adjacent machinery is ordinarily still running. He testified that he regularly works overtime, including shifts of twelve to sixteen hours.
Mays entered into evidence an audiometric report which established the noise levels in the mill from April 1983 to March 1988. The audiometric report showed extremely high decibel intensity of noise in the mill. Ms. Moulin testified that the Occupational Safety and Health Administration sets exposure to ninety decibels for an eight hour period as a point above which damage can occur. She testified that when the sound intensity increases by a factor of five decibels, then the amount of time that is permissible is halved. The audiometric report showed that a majority of the areas within the mill have a higher sound intensity than ninety decibels. The evidence established that Mays regularly worked in areas with high intensity levels. Ms. Moulin opined that the exposure to the intense noise level, coupled with the extended term of employment and the duration of exposure in the mill as related to the overtime hours and regular hours, caused the deterioration in Mays's hearing. She testified that he was clearly overexposed and that the wearing of the hearing aid exacerbated the overexposure.
Audiogram results for 1988 and 1989 were also entered into evidence. In reviewing the results, Ms. Moulin testified that the 1988 results reported awareness to speech stimuli. She testified that the 1989 results reported no comprehension of speech stimuli in either ear at any level.
The trial court made extensive findings of fact and law. It concluded that Mays suffered from an "occupational disease" in accordance with § 25-5-110, Code 1975. It *Page 472 
assessed benefits for a "complete and permanent loss of hearing in both ears" as provided in § 25-5-57(a)(3)a. 18.
Initially we must determine whether the trial court's treatment of the loss of hearing as an "occupational disease" is correct. James River contends that Mays's loss of hearing does not fall within the "occupational disease" statute because, it argues, the loss of hearing was precipitated by the 1962 accident and the hearing loss caused by that accident was not the result of an exposure over a period of time.
In a workmen's compensation case this court's review is limited to a determination of whether there is any legal evidence to support the trial court's conclusions. If, however, a reasonable view of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. Ex partePatterson, 561 So.2d 236 (Ala. 1990).
Section 25-5-110, Code 1975, provides the conditions for recovery under the Alabama Workmen's Compensation Law for an occupational disease. To be occupational, the disease must be due to hazards which are (1) in excess of those ordinarily incident to employment in general and (2) different in character from those found in the general run of occupations.Taylor v. United States Steel Corp., 456 So.2d 831
(Ala.Civ.App. 1984).
The fact that an employee had a preexisting condition does not affect an award of compensation if the job combined with the preexisting condition to produce injury or death.Taylor.
To recover benefits under this view, the claimant must prove aggravation or combination. An occupational disease is not compensable if it is not caused or aggravated by the nature of the employment. Chrysler Corp. v. Henley, 400 So.2d 412
(Ala.Civ.App. 1981).
In determining the loss of hearing to be an occupational disease, the trial court made the following findings:
 "The large amount of overtime, in addition to regular work hours worked by the Plaintiff, Roscoe Mays, Jr., increased the duration of the exposure and therefore, the extent of hearing loss. The Plaintiff, Roscoe Mays, Jr., presented the testimony of Linda Moulin as to the noise levels in the plant and the causation of the noise induced deafness in the Plaintiff, Roscoe Mays, Jr., by such excessive noise levels. The Defendant, James River Corporation, stipulated to her qualifications as an expert witness. . . . Her testimony was not contradicted by any expert witness or witness of the Defendant, James River Corporation. Further, there is no evidence or testimony to contradict the factual basis, such as the noise levels in the mill, for her opinion as to causation. No other cause of the deafness of Plaintiff, Roscoe Mays, Jr., was asserted or can be found in the evidence or testimony."
The record supports the trial court's findings. The facts as detailed previously, and Ms. Moulin's testimony that the 1962 loss of hearing would have stabilized at that time without further noxious stimuli, lead us to the conclusion that Mays's loss of hearing was caused by his employment and that the loss was due to hazards in excess of those ordinarily incident to employment in general, peculiar to the occupation, and the result of exposure over a period of time. The trial court's delineation of the hearing loss as an occupational disease is correct.
Having determined that Mays had a compensable disease, the trial court, in accordance with § 25-5-119, found that he suffered a "complete and permanent loss of hearing in both ears" and that such loss was compensable under §25-5-57(a)(3)a. 18.
James River asserts that for purposes of § 25-5-57(a)(3)a. 18, Mays had already suffered a "complete and permanent loss of hearing in both ears" as of 1979. It contends that it was error for the trial court to assess compensation against James River, arguing that the statute of limitations had *Page 473 
already run prior to Mays's employment with James River.
There is no definition of "complete and permanent loss of hearing" in this state. James River suggests that we take a clinical approach and set a certain decibel level to indicate when a "complete and permanent loss of hearing" has occurred. It insists that this is the general mode utilized by most jurisdictions to determine complete loss of hearing. James River cites no authority for this proposition. In our research we have not found a jurisdiction that takes a clinical approach as suggested by James River. In fact, the jurisdictions that have addressed this issue have expressly rejected such an approach. Aetna Ins. Co. v. Woody, 118 Ga. App. 819,165 S.E.2d 469 (1968); Shipman v. Employers Mut. Liab. Ins. Co.,105 Ga. App. 487, 125 S.E.2d 72 (1962); In re Vouniseas' Case,3 Mass. App. 133, 324 N.E.2d 916 (1975); Hill v. W.C.A.B. (LatrobeSteel Corp.), 117 Pa. Commw. 251, 543 A.2d 232 (1988); Babcock Wilcox v. W.C.A.B. (Phillips), 105 Pa. Commw. 539,524 A.2d 1080 (1987); Pilkanis v. Leesona Corp., 101 R.I. 494,224 A.2d 893 (1966).
The trial court made the following factual findings concerning Mays's complete loss of hearing:
 "The Plaintiff, Roscoe Mays, Jr.'s, complete and permanent loss of hearing occurred within two years of the filing of the suit in this case. Suit was filed on September 14, 1988. The Audiological Report of Dr. James McDill of August 23, 1988, as interpreted by Linda Moulin, revealed on that date 'speech awareness.' The Admission-Discharge Report of Dr. James Graham of March 20, 1989, as interpreted by Linda Moulin, found '. . . no comprehension of speech stimuli in either ear at any level. . . .' Further, as interpreted by Linda Moulin, the three Beltone Audiograms of July 18, 1962, October 31, 1978 and April 18, 1979, when compared to the Dr. McDill Audiological Report of August 23, 1988 and the Dr. James Graham Audiological Evaluation and Admission-Discharge Report of March 20, 1989 show continued loss of hearing capability of the Plaintiff Roscoe Mays from 1962 to 1989. Such loss continued after September 14, 1986."
The question of whether Mays suffered a "complete and permanent loss of hearing" during his employment with James River was a question of fact for the trial court. Its findings of fact as detailed above are supported by the record. We find no error with its assessment.
In reaching this conclusion, however, we are not holding that Mays could not have been determined to have suffered a "complete and permanent loss of hearing" under the statute prior to 1989 had a claim been filed and proof offered. We are holding that during Mays's employment with James River he suffered an increasing loss of hearing and that, at the time of filing his claim, he had suffered a complete and permanent loss of hearing.
James River next contends that it was error for the trial court to find James River completely liable for Mays's loss of hearing because documented and demonstrated prior loss of hearing occurred during prior employments. In essence, James River presents an apportionment argument.
In this state there is no apportionment of benefits in an occupational disease case. Chrysler Corp. v. Henley; §25-5-116, Code 1975. James River suggests that we adopt Minnesota's view on apportionment in workmen's compensation cases. In Minnesota the employer for whom the employee is working when he becomes disabled due to an occupational disease is solely responsible for compensation. Apportionment, however, is allowed in rare cases in which medical testimony permits a precise allocation of liability among the several employers.Polaschek v. Asbestos Products, Inc., 361 N.W.2d 37 (Minn. 1985); Halverson v. Larrivy Plumbing Heating Co.,322 N.W.2d 203 (Minn. 1982); Busse v. Quality Insulation Co.,322 N.W.2d 206 (Minn. 1982).
Even if we were inclined to adopt Minnesota's apportionment exception, the facts of this case do not lend themselves to such an application. Here, James River *Page 474 
failed to present any evidence in support of apportionment. In fact, its apportionment argument surfaced for the first time at closing arguments. We find no error in the trial court's refusal to apportion the compensation.
James River next asserts that if compensation is owed Mays then such compensation should be paid by the Second Injury Trust Fund as provided in § 25-5-57(a)(4)f. This assertion is without merit for the following reasons. James River failed to report the "second injury," as required by § 25-5-74; it did not seek to make the trust fund a party to this action for apportionment purposes; and it failed to raise any issue at trial concerning the liability of the trust fund. We do not consider issues which were not first raised in the trial court.Austin v. Burnett, 473 So.2d 1080 (Ala.Civ.App. 1985).
James River contends in brief that the imposition of compensation liability against it violates the equal protection and due process clauses of the United States Constitution and the Alabama Constitution. James River raises this issue for the first time on appeal. Constitutional issues not presented to the trial court are not available for argument on appeal.Steele v. Bibb, 519 So.2d 1334 (Ala. 1988); Ex parte Linnell,484 So.2d 455 (Ala. 1986).
James River finally contends that the award of benefits should be reversed due to the failure of Mays to show any loss of earning capacity. The trial court, in accordance with §25-5-119, properly awarded Mays benefits for the loss of a scheduled member pursuant to § 25-5-57(a)(3)a. 18. In Alabama, loss of earning capacity is not required when a scheduled injury is the basis for the award of compensation. Jackson v.Dunlop Tire Rubber Corp., 487 So.2d 940 (Ala.Civ.App. 1986); Conagra v. White, 348 So.2d 502 (Ala.Civ.App. 1977). We find no error.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.