ROBERTSON, Presiding Judge.
On October 2, 1991, Percy Hughes and Deward Kenny (employees) brought an action pursuant to the occupational disease provisions of the Workmen’s Compensation Act, alleging permanent hearing loss as a result of prolonged exposure to harmful levels of noise while employed with Scott Paper Company (Scott Paper). Following an ore tenus proceeding, the trial court concluded that each employee suffered from an occupational disease as defined by § 25-5-110(1), Code 1975; that each had sustained a permanent partial disability; and that each was entitled to compensation based upon his degree of hearing loss. Applying the formula for compensation of scheduled injuries, § 25-5-57(a)(3)a.l8., Code 1975, the trial court awarded benefits to each employee.
Scott Paper appeals, contending that disability caused by an occupational disease is not compensable under the scheduled injury provisions of the Workmen’s Compensation Act. For this contention, Scott Paper relies on the language of § 25-5-120, Code 1975. That Code section, found in the article of the Act that deals with compensation for occupational diseases (Article 4), read as follows at the time applicable to this ease:
“There shall be no presumption that disablement or death from any cause or infirmity is the result of an occupational disease, nor that an occupational disease will result in disablement or death, and any person claiming compensation or other benefits under this article shall have the burden of establishing that he is entitled to such.”
The import of this language, Scott Paper says, is that a claimant seeking recovery for an occupational disease is required to prove an actual loss of earning capacity in order to receive compensation. (Scott Paper asserts that the word “disablement” as used in § 25-5-120 is synonymous with “loss of earning capacity.”) Because it is well settled that a loss of earning capacity is not required when a scheduled injury is the basis for compensation, Jackson v. Dunlop Tire & Rubber Corp., 487 So.2d 940 (Ala.Civ.App.1986), Scott Paper maintains that § 25-5-120 evidences a legislative intent that the provisions for scheduled injuries do not apply to occupational disease claims. Scott Paper further maintains that because the employees here did not demonstrate a loss of earning capacity, they would not be entitled to benefits under any other provisions of the Act.
Because the facts in this case are not in dispute, we must determine whether the trial court correctly applied the law to those *640 facts. USX Corp. v. Mabry, 607 So.2d 249 (Ala.Civ.App.1992).
In response to Scott Paper, the employees argue that the applicability of the Act’s scheduled injury provisions to claims alleging occupational disease was conclusively settled in James River Corp. v. Mays, 572 So.2d 469 (Ala.Civ.App.1990), where this court affirmed an award of scheduled benefits to a millwright who had brought a claim for occupational hearing loss under the Act’s occupational disease provisions. Scott Paper, however, contends that James River does not control the issues raised in the present appeal because, it says, the effect of § 25-5-120 was not an issue before the court in that case.
While we did not specifically address the significance of § 25-5-120 in our opinion in James River, we are, nonetheless, convinced that the award of benefits in that case was proper in every way. Moreover, we are unpersuaded by Scott Paper’s contention that § 25-5-120 precludes compensation to occupational disease claimants under the Act’s scheduled injury provisions, for the interpretation of § 25-5-120 that has been espoused by Scott Paper contradicts the clear and unequivocal language of § 25-5-119 of the Act’s occupational disease provisions. Section 25-5-119, Code 1975, read, in part, as follows at the time applicable to this ease:
“The compensation payable for death or disability caused by an occupational disease, as defined in this article, shall be computed in the same manner and in the same amounts as provided in article 3 of this chapter for computing compensation for disability or death resulting from an accident arising out of and in the course of the employment and the medical, surgical, hospital, and burial benefits payable under this article caused by said disease shall be computed in the same manner and in the same amounts as provided in Article 8 of this chapter for computing like benefits.”
By this language, the legislature clearly provides that occupational diseases are to be compensated in the same manner as injuries resulting from accidents. (See Article 3, Workmen’s Compensation Act.) Article 3 contains provisions for compensation of scheduled injuries — at § 25-5-57(a)(3)a. — as well as “non-scheduled” injuries — at § 25-5-57(a)(3)g. Had the legislature intended for occupational disease claims under Article 4 to be compensated only upon a showing of lost earning capacity, it would have drafted § 25-5-119 to provide that compensation for occupational diseases would be determined solely according to the provisions of § 25-5-57(a)(3)g., which provides for compensation of non-scheduled injuries according to an employee’s loss of earning capacity. This the legislature did not do.
We also find Scott Paper’s position to be untenable because, if adopted, it could lead to intolerable results: If the schedule of injuries at § 25-5-57(a)(3)a. of Article 3 is not applicable to occupational disease claims under Article 4, there would be no means for awarding compensation in cases of occupational hearing loss due to prolonged exposure to harmful noise. Conceivably, any number of cases where an occupational disease results in injury to a scheduled member would also be non-compensable. Scott Paper’s interpretation of § 25-5-120 undermines the beneficent purposes of the Workmen’s Compensation Act. Dan River Mills, Inc. v. Foshee, 365 So.2d 1232 (Ala.Civ.App.1979).
As noted above, Scott Paper’s argument is premised on its contention that the word “disablement” in § 25-5-120 is synonymous with “loss of earning capacity.” However, there is a more reasonable interpretation of the language in § 25-5-120 than that proffered by Scott Paper. We find that the provision requiring a claimant to show that his occupational disease has resulted in “disablement” merely places on the claimant the burden of establishing that his occupational disease has resulted in a compensable physiological condition or impairment. Clearly, hearing loss is a physiological impairment compensable under the Act. See § 25-5-57(a)(3)a.l8. Our interpretation of § 25-5-120 is consonant with the entirety of the Act and avoids the illogical results that would derive from a contrary interpretation.
Scott Paper also contends on appeal that the trial court erred to reversal by allowing into evidence, over Scott Paper’s objection, *641 copies of OSHA regulations relating to occupational noise exposure standards and several reports and memoranda prepared by a hearing conservation consultant that Scott Paper had hired for the purpose of monitoring noise levels in its facility and assisting in its compliance with OSHA regulations. Scott Paper maintains that the regulations and reports were irrelevant and prejudicial and were introduced for the purpose of establishing “fault” on the part of Scott Paper.
Notwithstanding Scott Paper’s contentions, we find that the regulations and other documents entered into evidence were relevant to the issues for determination by the factfinder. Certainly, information in the reports and memoranda of the hearing conservation consultant, who conducted noise studies at Scott Paper’s facility, went directly to the issue of whether the employees were exposed to significant and prolonged amounts of noise, without protection from all available conservation measures, while working for Scott Paper. Among the defenses available to Scott Paper were that the employees were not subjected to levels of noise sufficient to cause their diagnosed hearing loss and that Scott Paper’s existing conservation measures sufficiently ameliorated the noise levels in its facility to prevent the employees’ hearing loss. It is undisputed that Scott Paper employed the services of the hearing conservation consultant in order to assist in its compliance with the OSHA regulations. These regulations provided technical data on how to evaluate and properly average the levels of noise an employee is exposed to during a normal workday and indicated the noise level at which it becomes necessary for an employer to establish a hearing conservation program. The evidence at trial established that the employees were, in fact, subjected to noise levels for which the OSHA regulations indicated protective measures. Thus, we conclude that the trial court committed no error by admitting the contested regulations and documents into evidence.
Assuming, without so holding, that the contested evidence was, as Scott Paper claims, inadmissible, we conclude that the findings of fact entered by the trial court are otherwise supported by sufficient legal evidence and that a reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
In view of the above, the trial court’s judgment is due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.